HENRY A. KUCKENBERG, TRANSFEREE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75197–75199. Filed December 30, 1960.

---

[1] The following proceedings are consolidated herewith: Harriet Kuckenberg, Transferee, Docket No. 75198, and Lawrence W. Kuckenberg, Transferee, Docket No. 75199.

474

*William H. Kinsey, Esq.*, and *James R. Moore, Esq.*, for the petitioners.

*John D. Picco, Esq.*, for the respondent.

476

478

## OPINION.

BLACK, *Judge:* The petitioners contend that they are not liable as transferees of the corporation. Both parties are in agreement that the burden of proof is on respondent to prove transferee liability of petitioners. Respondent contends that he has met that burden of proof and petitioners contend that he has not done so.

Petitioners contend that under the law as interpreted by the Supreme Court in *Commissioner* v. *Stern*, 357 U.S. 39, whether one is liable as a transferee is determined under State law. Respondent concedes the force of the *Stern* decision and makes no contention but that Oregon State law governs as to whether petitioners are liable as transferees. Respondent contends that under the facts in these consolidated proceedings petitioners are liable as transferees both at law and in equity under Oregon State law. Respondent's contention that petitioners are liable at law is based upon the fact that the plan of complete liquidation of the corporation provided that the assets of the corporation should be distributed to the stockholders "subject to all of the liabilities of the corporation, shall be distributed pro rata to the stockholders of the corporation." Respondent argues that because of this language used in the resolution of liquidation, when petitioners accepted the assets transferred to them, they therefore assumed and agreed to pay all the liabilities of the corporation, including its tax liabilities to the Federal Government. It is doubtless true that if under the language above quoted petitioners *assumed* and *agreed* to pay all the liabilities of the corporation, including the tax deficiencies

here involved, they would be liable at law as transferees. But we need not decide whether, under the language above quoted, petitioners became liable at law as transferees for it seems clear to us that under the facts herein the petitioners are liable in equity as transferees.

The corporation was dissolved in 1955 and distributed all of its assets to petitioners without consideration. The value of these assets was far in excess of the deficiencies which the Commissioner is claiming in these proceedings as unpaid by the corporation. It is true that those deficiencies were not known at the time of the distribution of the assets. But that fact makes no difference. If petitioners are transferees in equity they are liable for the deficiencies in tax due by the corporation for periods prior to the distribution even though unknown at that time. Petitioners, in their brief, argue that a transferee liability in equity is secondary and that because of that fact the Commissioner must first proceed against the corporation. That is undoubtedly true as a principle of equity. If the corporation here had been still in business and possessed of assets of its own, the Commissioner would first have had to proceed against the corporation and exhaust his remedies there before proceeding against petitioners as transferees. It seems unnecessary to further discuss that point because we do not understand that the Commissioner contends otherwise. But the corporation was not in business. It had ceased business in 1955 and had distributed all of its assets to its stockholders (petitioners) and had been dissolved. It is true that under Oregon law it could, for a period of time, in winding up its affairs still sue and be sued, but we think that makes no difference here. Of what avail would a suit be against a corporation which had been dissolved and left with no assets? Equity does not require a futile thing and if a corporation has been dissolved and left without any assets equity does not require a proceeding against the corporation before the creditor can proceed against the transferee. In *United States* v. *Fairall*, 16 F. 2d 328, the court, among other things, said:

The rule that you must get judgment and issue execution against a debtor as a condition precedent to following his assets into the hands of transferees is not absolute. If it is impossible to get judgment, or if, when you get it, it is manifestly useless, equity does not insist upon such an idle formality. [Citing cases.]

Both parties cite and comment on several Oregon cases which deal with transferee liability in equity. We find it unnecessary to discuss and comment upon these Oregon cases. Suffice it to say that we have examined them and from such examination we are convinced that the trust fund doctrine exists in Oregon and has been recognized by the Supreme Court of that State in numerous cases. The trust fund doctrine in Oregon has been interpreted by the Supreme Court of that

State, as we understand its decisions, in much the same manner as the Second Circuit interpreted it in *United States* v. *Fairall, supra.* Notwithstanding that fact, one of the points which petitioners strongly press in their brief is that the Commissioner cannot enforce transferee liability under section 6901(a) of the 1954 Code until he has first issued a deficiency notice to the dissolved corporation under section 6212 of the 1954 Code. Petitioners, in their brief, give the names of a long line of cases where the question of transferee liability was involved and point out that in each of those cases a deficiency notice had been mailed to the transferor prior to the mailing of a liability notice to the transferee. But the fact that that was done in those cases does not establish the principle that, in a situation where the transferor corporation has been dissolved and all of its assets distributed to its stockholders, the Commissioner must first issue a deficiency notice to the transferor before issuing a liability notice to the transferee.

We decided to the contrary in *W. W. Cleveland*, 28 B.T.A. 578 (1933), affd. 77 F. 2d 184 (C.A. 5). In that case the Board of Tax Appeals rejected this argument and concluded that the issuance of a notice of deficiency against the corporate taxpayer was unnecessary. It held that the Government could enforce the liability of the transferee-stockholders directly and at once. In so holding the Board stated as follows:

> In our opinion the first point in petitioners' contention, as above set out, is without merit. A deficiency is not created by any act of the respondent, but by the facts and the legal significance thereof as set out in the taxpayer's income tax return. The so-called "60-day letter" [the present 90-day letter] is no more than notice to the taxpayer that the amount of a deficiency disclosed by its return has been determined under the applicable statute. In our opinion no assessment, notice, or other act of the respondent is necessary to establish liability for income taxes. We think that any deficiency existing at the date of a transfer of assets is a liability against such assets under the trust fund theory. *United States* v. *Garfunkel*, 52 Fed. (2d) 727; *Helen Dean Wright*, 28 B.T.A. 543.

> The question here raised by the petitioners is material only as to whether the respondent exhausted all means to collect the unpaid taxes from the taxpayer before he proceeded against its stockholders as transferees of assets impressed with a trust in favor of the revenue. * * * At March 4, 1932, the date at which respondent determined the liabilities of petitioner under section 311 of the Revenue Act of 1928, the taxpayer had no assets, and the respondent was without any means to enforce the collection of the deficiencies in question. In these circumstances it is clear that liabilities against the petitioners were properly determined * * *

We hold against petitioners as to this contention. Of course, it goes without saying that when the Commissioner does mail to a transferee a notice of liability under section 6901, 1954 Code, he must inform the transferee of the extent and nature of the tax deficiency which he is

claiming against the transferor. This the Commissioner has done in the instant case.

In his notice of transferee liability to Henry A. Kuckenberg, Docket No. 75197, the Commissioner stated, among other things, as follows:

You are advised that the determination of the income tax liability of Kuckenberg Construction Co., * * * Transferor, for the taxable years 1954 and January 1 to December 7, 1955, discloses deficiencies in the respective amounts of $280,658.62 and $183,123.71 and section 6653(a) penalties in the respective amounts of $14,032.93 and $9,156.19, as shown in the statement attached. The total of the deficiencies in income tax and penalties, plus interest as provided by law, represents your liability as a transferee of assets of said corporation.

In accordance with the provisions of existing internal revenue laws, notice is hereby given of the deficiencies mentioned.

There is attached to this notice of transferee liability a detailed statement of the unpaid tax deficiencies which the Commissioner claims is owing and unpaid by the transferor corporation for the year 1954 and the period January 1 to December 7, 1955. The same facts as stated above in the case of Henry A. Kuckenberg, Transferee, are present in the cases of the other two petitioners.

When the transferee appeals from the notice of transferee liability asserted by the Commissioner against him, the burden of proof is on the Commissioner to establish transferee liability and the burden of proof is on the transferee to show error in the determination of the deficiency against the transferor. It is clear to us, because of the facts stated in our Findings of Fact, that the Commissioner has met his burden of proof in showing that petitioners are liable as transferees. As to this issue of transferee liability, we decide in favor of the Commissioner.

In view of this decision as to transferee liability, we shall now take up the issues which have been raised by the pleadings with respect to the tax liability of the transferor corporation during the taxable years involved.

1. *Sale of contracts.*—In each of the taxable periods of the transferor corporation the Commissioner has added to the net income disclosed by the returns of the transferor corporation, the following "(a) Construction contract income $359,446.42." The above adjustment is explained by the Commissioner in his notice to each of the transferees, as follows:

(a) It is determined, because of the liquidation of Kuckenberg Construction Co., that there should be taxed to the corporation, in its last taxable periods, earnings of $359,446.42 on three certain construction contracts, under the provisions of section 446(b) of the Internal Revenue Code of 1954. As there now exists an uncertainty as to the proper allocation of such additional income between the years 1954 and January 1 to December 7, 1955, it has been found necessary, in order to protect the Government's interest, to increase the taxable income of the corporation for both the years 1954 and January 1 to December 7, 1955 by the total $359,446.42.

There is now no longer any issue in these proceedings concerning the amount of the gain from the sale by the corporation of three of its construction contracts to David B. Simpson or as to the time when such amounts were received. The Commissioner in his brief states:

Because under the evidence adduced in these proceedings it would appear that the transfer of the contracts to Simpson represented an arm's length transaction, respondent no longer presses the argument that the amount of ordinary income taxable to the corporation was $359,446.42. Instead respondent now urges, for the reasons stated forthwith, that the amount of ordinary income taxable to the corporation with respect to the transaction in question is limited to the proceeds of sale in the aggregate amount of $327,000, taxable as received by the corporation, that is, $100,000 in 1954 and the balance of $227,000 in 1955.

Petitioners, although they concede that $327,000 gain was realized by the corporation from the sale of the three contracts to Simpson, nevertheless contend that such gain is not to be recognized for tax purposes to the transferor corporation in process of liquidation because of the provisions of section 337, 1954 Code. That portion of section 337 upon which petitioners rely is printed in the margin.[2] With reference to the sale by the transferor corporation of these three contracts to Simpson it has been stipulated as follows:

On December 27, 1954, pursuant to the plan of complete liquidation, the corporation sold, transferred and assigned the three construction contracts to a third party (David B. Simpson) for the total purchase price of $327,000. Said purchase price was received by the corporation in installments of: $100,000 on December 30, 1954, $100,000 on January 17, 1955, and $127,000 on January 24, 1955. Such amounts received by the corporation as consideration for the sale, transfer and assignment of the three construction contracts, were entered on the books of the corporation.

---

[2] SEC. 337.   GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.
  (a) GENERAL RULE.—If—
    (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
    (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims.
  then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.
  (b) PROPERTY DEFINED.—
    (1) IN GENERAL.—For purposes of subsection (a), the term "property" does not include—
      (A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business,
      (B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and
      (C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.

It seems to us that these facts, coupled with other facts stated in our findings, bring the gain realized from the sale of the three contracts within the nonrecognition provisions of section 337 of the 1954 Code. It certainly cannot be contended, we think, that contracts such as these sold to Simpson do not constitute property. Simpson certainly must have purchased them as property from which he expected to make a profit. The uncontradicted evidence is that Simpson realized a profit of $32,446.42 from the transaction. This profit would, of course, be taxable to him and not to the corporation. The property which these contracts represented, it seems to us, is not excluded from the nonrecognition of gain or loss provisions of section 337(b), printed in the margin.

Of the several cases cited by respondent in his brief in support of his position, we find only one which deals with section 337. The other cases cited by respondent seem to us to have no relevancy to the question we have here to decide. That one case which deals with section 337 is *Central Building & Loan Association*, 34 T.C. 447. We do not think that case is controlling here. In the *Central Building & Loan Association* case we had a finding of fact which reads:

On the date of sale of its assets to Guaranty, interest had been earned in the amount of $30,138.03, but was not then due and payable, upon outstanding note obligations issued to petitioner. The earned, but uncollected, interest was not separately reported as taxable income by petitioner in its 1956 return, but was included in the amount of $171,351.59, which was shown as nontaxable gain in a schedule attached to its return.

The respondent has recomputed petitioner's income by adding the earned, but uncollected, interest to taxable income.

In the course of our opinion denying taxpayer's claim that the $30,138.03 in interest fell within the nonrecognition provisions of section 337, we said:

The parties are in agreement that the amount of $171,351.59 shown by petitioner in its return as nontaxable gain upon the sale of its assets includes the interest item in controversy in the amount of $30,138.03. We find therefore that on the date of its receipt of the former figure it was actually paid interest in the latter amount. *In lieu of a "sale of the right to receive interest," there was effectuated at that time an actual collection of interest by petitioner.* Respondent was not compelled to treat the interest as accrued for it was actually received. Because the nonrecognition of gain or loss under section 337(a) is with respect only to the sale or exchange of property, it can have no application to the transaction here at issue for no sale took place and it is not contended that the receipt and collection of interest represented an exchange of property. [Emphasis supplied.]

It seems manifest to us that the facts of the instant case with respect to the sale of the three contracts to Simpson are distinguishable from the collection of interest which was involved in the *Central Building & Loan Association* case. We hold in favor of petitioners on this issue with respect to the sale of the three contracts.

2. *Booth Ranch contract.*—In the liability notices to petitioners as transferees the Commissioner added to the net income as disclosed on the return of the transferor corporation "(b) Booth ranch contract $86,222.19." This adjustment was explained by the Commissioner in his notice as follows:

(b) It is also determined, because of the liquidation of the Kuckenberg Construction Co., that there should be taxed to the corporation in 1954 accruable earnings of $86,222.19 from a certain Booth ranch contract, based upon a percentage of completion method of computation.

The transferor corporation adopted its plan of liquidation on December 17, 1954. It was then performing work on the Booth Ranch contract. On January 14, 1955, it distributed to the petitioners most of the corporate assets, including the operating assets of the business. These assets were immediately transferred to petitioners' partnership which continued operation of the construction business. At the same time the Booth Ranch contract was assigned through petitioners to the partnership for completion. Thereafter the work was performed by the partnership. The project was completed in 1957.

The Booth Ranch contract was profitable. The gross receipts came to $913,240.72 and the expenses were $551,518.30, leaving a net profit of $361,722.42. The corporation incurred costs of $74,018.05 on work performed by it on the contract, but only received $12,633.75 of the total gross receipts. This amount it reported on its 1955 return. The partnership expended $477,500.25 but in turn received $900,606.97 of the gross receipts. Despite the substantial profits ultimately made on the contract the corporation reported losses therefrom of $50,019.05 and $11,365.25, respectively, for 1954 and the last taxable period in 1955.

The Commissioner determined on these facts that the losses reported by the corporation did not truly reflect its income from the contract. In his notices to petitioners the Commissioner allocated the profits from the contract between corporation and partnership in proportion to the work done by them. Profits were allocated to the corporation by computing the ratio of the costs incurred to January 14, 1955, the date of liquidation, to the total contract costs, and then applying that ratio to the total profits from the contract.

In determining the deficiencies of the transferor corporation in the notices to petitioners as transferees, respondent included in corporate income $36,203.14 and $6,566.63 for 1954 and the last taxable period in 1955, respectively, as income earned by the corporation from the contract. Respondent's position is that the strict application of the cash basis method of accounting in these cases does not clearly reflect the income realized by the corporation from the Booth Ranch contract, and that he had the right under section 446 of the 1954 Code to use a method which would properly reflect that income. The right to

do this is the primary question presented here. Section 446 upon which respondent relies is printed in the margin.[3]

Respondent cites as authority for his allocation of a portion of the profits from the Booth Ranch contract to the transferor corporation, *Jud Plumbing & Heating, Inc.*, 5 T.C. 127, affd. 153 F. 2d 681 (C.A. 5), and *Standard Paving Co.*, 13 T.C. 425, affd. 190 F. 2d 330 (C.A. 10). While the facts in the instant case are not the same as in the two above-cited cases, we think they do support in principle the allocation which respondent has made.

In determining the deficiencies, respondent included in corporate income $36,203.14 and $6,566.63 for 1954 and the last taxable period in 1955, respectively, as income earned by the corporation from the contract, based upon the theory that the contract had been completed in 1955. The larger amounts of $41,091.88 and $7,454.09 now being asserted by respondent as the income allocable to the corporation are based upon evidence produced at the hearing showing that the contract was completed in 1957. According to the revised allocation now urged by respondent, the total profits from the Booth Ranch contract in the amount of $361,722.42 are taxable in the amount of $48,545.97 to the corporation and $313,176.45 to the partnership. We think the facts in the record justify respondent's revised allocation.

On this issue we sustain respondent.

3. *Depreciation.*—In his determination of the deficiencies of the transferor corporation as made in his notices to the transferees, the Commissioner has added to the net income as reported on the return filed by the transferor corporation for the year 1954 "(d) Excessive depreciation $68,898.74." This determination is explained in the notices as follows:

(d) It is determined that the depreciation deduction claimed by the corporation in the year 1954 was overstated by $68,898.74. See the attached depreciation schedule for details of this computation.

He made the same kind of adjustment for the taxable period of the corporation, January 1 to December 7, 1955, except the amount for that period was $1,927.38 and the adjustment was explained in the notices in the same manner as for 1954.

---

[3] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.

(c) PERMISSIBLE METHODS.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting—

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

With respect to this issue, the depreciable assets consisted primarily of the assets included in the liquidating distribution to the petitioners and simultaneously transferred by them to the partnership on January 14, 1955. Both the corporation and the partnership employed the straight line method of depreciation. On January 14, 1955, the assets were reappraised by the partnership to which the petitioners assigned them and the life of each asset redetermined and extended for an additional 3 years for some of the assets and 4 years as to other of the assets, commencing from January 14, 1955.

The corporation filed its tax return for 1954 on May 20, 1955, 4 months after the transfer of the assets to the petitioners and their simultaneous transfer to the partnership. The final return of the corporation and the information return of the partnership for 1955 were filed simultaneously on July 12, 1956. The assets were shown in the depreciation schedules attached to the corporate returns as expiring in 1954 and 1955. At the time of preparing the corporate returns the petitioners and the corporation's accountant had knowledge of the reappraisal made of the assets on January 14, 1955. Although the petitioners and the accountant knew that the assets had a longer useful life than originally estimated in the corporate returns, no adjustment was made to reflect the extended life of the assets.

Respondent contends that, on the basis of the record, it would be unreasonable to conclude that the Commissioner erred in determining that the depreciable property had a remaining useful life in 1954 and 1955 to the extent which he has determined. So far as we can see there is no evidence to show error in such a determination. Petitioners offered no evidence as to the remaining useful life of the assets.

Petitioners' principal contention with respect to this issue of depreciation is that since the corporation had used the straight line method of depreciation in prior years and used it in the taxable periods here involved, the Commissioner had no right to change it. Undoubtedly the straight line method of taking depreciation is one of the methods which section 167(b) of the 1954 Code recognizes as proper for a taxpayer to use. That does not mean, however, that the Commissioner is bound to recognize in any one year the same amount as the taxpayer was permitted to deduct in a prior year. Section 1.167(a)–1, Income Tax Regs., reads as follows:

DEPRECIATION IN GENERAL.—(a) *Reasonable allowance.*—Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (*not necessarily at a uniform rate*), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property,

equal the cost or other basis of the property as provided in section 167(f) and § 1.167(f)–1. * * * [Emphasis supplied.]

We think under the above-quoted regulation, which we think is a valid regulation, the Commissioner had the authority to make the changes which he did make in the depreciation deductions which the transferor corporation took on its returns. We find nothing in the record which would justify us in holding that he erred in so doing.

We sustain respondent as to the depreciation issue.

In the stipulation of facts filed by the parties it was agreed by the parties that,

The travel expenses of $16,416.67 specified in Item (c) of the statutory notices as an unallowable deduction for 1954 constitutes an allowable deduction to the extent of $5,916.67, and the $10,500.00 balance is an unallowable deduction for 1954 or for any other period.

The negligence penalty under section 6653(a) of the 1954 Code is not applicable against the corporation for 1954 or for the period from January 1 through December 7, 1955.

Effect will be given to these agreements in a computation under Rule 50.

*Decisions will be entered under Rule 50.*