Sarah G. Wimp, et al. [1] v. Commissioner. Wimp v. Commissioner
Docket Nos. 87347-87349.
United States Tax Court
T.C. Memo 1961-342; 1961 Tax Ct. Memo LEXIS 7; 20 T.C.M. (CCH) 1790; T.C.M. (RIA) 61342; December 26, 1961
*7 Petitioners concede they are liable as transferees for any deficiency, plus interest thereon as provided by law, that might be due from a dissolved corporation for the taxable year 1955. Held, the corporation, which kept its books and filed its returns on the cash receipts and disbursements method, realized a gain of $37,927.50 in 1955, by reason of the conveyance in that year of certain accounts and notes receivable of the face value of $37,927.50 to a new corporation in return for promissory notes of the new corporation of the same face value, which gain is not unrecognizable under section 337, I.R.C. 1954. Family Record Plan, Inc., 36 T.C. 305, followed. Robert Nagel Jones, Esq., 1010 Arcade Bldg., St. Louis, Mo. for the petitioners. James H. Martin, Esq., for the respondent. ARUNDEL Memorandum Opinion ARUNDEL, Judge: In these consolidated proceedings respondent determined a transferee liability of $9,778.24 against each petitioner as the transferee of assets of Grim-Smith Memorial Hospital (hereinafter sometimes referred to as Grim-Smith), a dissolved Missouri corporation, for an unpaid deficiency in income tax *9 of $9,778.24 determined by the respondent to be due from the corporation for the calendar year 1955. Petitioners concede they are liable as transferees for any deficiency, plus interest thereon as provided by law, that might be due from the dissolved corporation for 1955. The only issue is whether Grim-Smith realized, during the taxable year 1955, ordinary income which it should have recognized upon the transfer to Northeast Missouri Medical Clinic, Inc. (hereinafter sometimes referred to as Clinic), another Missouri corporation, of accounts and notes receivable in the total face value of $37,927.50 for which Grim-Smith received $37,927.50 in promissory notes. The facts were stipulated and are so found. Petitioners are the transferees of the assets of Grim-Smith Memorial Hospital, a Missouri corporation, which was incorporated on February 12, 1924. Grim-Smith owned and operated a hospital in Kirksville, Missouri, until on or about December 1, 1955. Grim-Smith filed a Federal corporation income tax return for the taxable year ended December 31, 1955, with the district director of internal revenue at St. Louis, Missouri. Such return disclosed taxable income of $28,516.09 and a *10 tax of $9,236.75. In arriving at such taxable income, Grim-Smith claimed deductions in the amounts of $119,940.99, $4,775.22, and $37,553.60 for salaries and wages, utilities, and other deductions, respectively, which it expended in connection with the operation of its hospital. At a special meeting held on September 20, 1955, the stockholders of Grim-Smith adopted the following resolution: Whereas the stockholders of this corporation have been advised of the provisions of V.A.M.S., Title XXIII, Sec. 351.460, et seq., relating to Dissolution and Forfeiture of corporations in the State of Missouri, and Whereas this meeting has been called to consider the matter, and Whereas, after considering the statement and reports of officers and others, it is now understood that negotiations for sale can be reduced to agreement on or as of December 1, 1955, and Whereas it appears to be to the best interests of the stockholders of this corporation that its business should be terminated, the corporation dissolved, and its assets distributed according to law, Now, Therefore, the holders of record of all of the outstanding shares of stock entitled to vote thereon concurring, Be It Hereby *11 Resolved that this corporation elects to dissolve voluntarily; that pursuant to the Missouri General and Business Corporation Law, the officers of this corporation be and are authorized and directed to execute and file with the Secretary of State duplicate, verified Articles of Dissolution; that an immediate, partial distribution of thirty thousand dollars ($30,000.00) is authorized and, to expedite the liquidation and sale of remaining assets, those assets may be mortgaged and notes in payment therefor may be distributed; that J. J. Wimp, M.D. be appointed liquidating trustee, and as required by law, he shall: notify known creditors of this corporate action, collect assets, convey and dispose of property, pay, satisfy, and discharge the liabilities and obligations, and thereafter distribute the remainder of assets either in cash or in kind among the then stockholders according to their interests, and do all other acts, including payment of all lawful fees and final taxes incidental or necessary to liquidate the affairs of this corporation; and that after such liquidation, the president and secretary shall file duplicate, verified Articles of Liquidation with the Secretary of State, *12 and take such other steps as are necessary or desirable for the acts contemplated in this Resolution. On November 5, 1955, at a special meeting, the stockholders of Grim-Smith adopted the following resolution: Be It RESOLVED that the resolution adopted at the special meeting of stockholders held on September 20, 1955, be and is amended and clarified as follows: The action of this corporation in making partial distribution by the issuance of certain notes on September 27, 1955, secured by a trust deed, be rescinded and voided. Said notes, dated September 27, 1955, shall be surrendered and cancelled and the trust deed terminated and satisfied of record; so that the liquidation shall continue as if the action of September 27, 1955 had not been contemplated, particularly in view of the fact that such was performed only for convenience in liquidation and was not indispensable to the liquidation. On or as of December 1, 1955 the assets of this corporation shall be conveyed as part of said liquidation to the purchaser on the terms heretofore agreed on, and the liquidating trustee on this corporation's behalf is authorized to accept notes in payment therefor, secured by deed of trust. *13 Excepted from the assets to be conveyed on December 1, 1955 is the cash then on hand, which shall be retained by the liquidating trustee for payment of income taxes or other debts and, when with all reasonable dispatch, the liquidating trustee is able to complete the liquidation, the balance of any cash then on hand shall be turned over to the purchaser; and, it is to be noted that the only thing then left and finally distributable to the stockholders shall be the notes totalling one hundred and twenty thousand dollars ($120,000.00) made as payment by the purchaser. So that, after distribution to this corporation's stockholders and final liquidation, the assets of the corporation shall be received by the purchaser free and clear of all encumbrances. On or about December 1, 1955, Grim-Smith conveyed to Clinic the following assets: cash, accounts receivable, notes receivable, inventory of supplies, furniture, hospital fixtures, land and buildings. In return for such assets, Grim-Smith received from Clinic two promissory notes, each in the amount of $60,000. The accounts receivable and notes receivable included in such conveyance represent amounts due Grim-Smith for the use of its facilities *14 and for services rendered by its employees during the year 1955 and prior thereto. Such accounts receivable and notes receivable had a total face value of $37,927.50 which is the amount Grim-Smith received for them, as part of the $120,000, from Clinic. Subsequent to December 1, 1955, and prior to May 8, 1956, Grim-Smith distributed one of the notes of Clinic in the amount of $60,000 to petitioner Jessie M. Grim and the other of such notes, also in the amount of $60,000, to petitioners J. J. Wimp and Sarah G. Wimp. At the time of such distribution, petitioner Jessie M. Grim owned 50 percent of the capital stock of Grim-Smith and petitioners J. J. Wimp and Sarah G. Wimp, husband and wife, owned the other 50 percent of such capital stock. The distribution of such notes left Grim-Smith without assets with which to pay its deficiency in income tax, if any. On or about May 8, 1956, the Secretary of State of Missouri issued a certificate of dissolution in the name of Grim-Smith. At that time Grim-Smith was dissolved. Grim-Smith at all times herein mentioned kept its books and filed its Federal income tax returns on the cash receipts and disbursements method. On December 2, 1955, Grim-Smith *15 filed with the district director of internal revenue at St. Louis, Missouri, Treasury Form 966 notifying such district director of the adoption of a plan of complete liquidation by Grim-Smith. In determining the deficiency in income tax due from Grim-Smith for the calendar year 1955, the respondent increased the taxable income reported by Grim-Smith in its return for that year by an amount of $37,927.50 as "(a) Ordinary income increased" which, in a statement attached to each of the transferee liability notices, he explained thus: (a) During the taxable year 1955, Grim-Smith Memorial Hospital sold accounts receivable and notes receivable to Northeast Missouri Medical Clinic, Inc., for the amount of $37,927.50 which amount Grim-Smith Memorial Hospital did not report as income on its federal income tax return for the taxable year 1955. It is held that Grim-Smith Memorial Hospital realized and recognized ordinary income in the amount of $37,927.50 as a result of such sale. Accordingly, taxable income of Grim-Smith Memorial Hospital for the taxable year 1955 is increased in the amount of $37,927.50. Petitioners contend that the respondent erred in his determination as set forth in *16 the above explanation. Petitioners point out that since Grim-Smith had adopted a plan of complete liquidation in the latter part of 1955 and within 12 months thereafter had distributed in complete liquidation all of its assets, consisting of the promissory notes received from Clinic for the conveyance to Clinic on or about December 1, 1955, of the properties previously mentioned herein, then in accordance with section 337(a), I.R.C. 1954, [2] "no gain shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period." (Italics supplied.) We think the issue here involved *17 is controlled by our recent decision in Family Record Plan, Inc., 36 T.C. 305, on appeal to C.A. 9. In that case we held that accounts receivable, like the accounts receivable here involved, were "installment obligations" as that term is used in section 337(b)(1), I.R.C. 1954, [3] and thus excluded from the meaning of "property" as that term is used in section 337(a). In that case the taxpayer contended that the accounts receivable sold by it were not "installment obligations" since it did not elect to use the installment method of reporting but, on the contrary, had always used the "cash" basis. In disagreeing with this contention, we said: We do not agree with petitioners' contentions. The clear intent of Congress was that sales in the ordinary course of business would result in ordinary gain to the corporation as if it were not in the process of liquidating. If we were to adopt transferor's contention, a cash basis taxpayer would be able to sell merchandise on credit, then sell his accounts receivable acquired in the ordinary course of business and have no recognizable gain. Conversely, an accrual basis taxpayer or a taxpayer using the installment *18 method under section 453 would have a recognizable gain in a similar transaction. Transferor's position is contrary to the intent of Congress and cannot be sustained. * * * We know of *19 no reason why the same rule should not apply to notes receivable as well as to accounts receivable. Therefore, in the instant case, we hold that the accounts and notes receivable of the face value of $37,927.50 were likewise installment obligations and thus excluded from the meaning of "property" as that term is used in section 337(a). Family Record Plan, Inc., supra. Petitioner cites and strongly relies upon Henry A. Kuckenberg, 35 T.C. 473 (on appeal to C.A. 9). We distinguished that case in Family Record Plan, Inc., supra, p. 312, and do not regard it as in point. We further hold that in conveying the accounts and notes receivable to Clinic in return for promissory notes of the same face value Grim-Smith realized ordinary income in the amount of $37,927.50, which income is not unrecognizable under section 337. Family Record Plan, Inc., supra. We, therefore, sustain the respondent's determinations herein. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Jessie M. Grim, Docket No. 87348, and J. J. Wimp, Docket No. 87349.↩
2. SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (a) General Rule. - If - (1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and (2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.↩
3. SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS. (b) Property Defined. - (1) In general. - For purposes of subsection (a), the term "property" does not include - (A) stock in trade of the corporation, or other property of a kind which would properly be included in the inventory of the corporation if on hand at the close of the taxable year, and property held by the corporation primarily for sale to customers in the ordinary course of its trade or business, (B) installment obligations acquired in respect of the sale or exchange (without regard to whether such sale or exchange occurred before, on, or after the date of the adoption of the plan referred to in subsection (a)) of stock in trade or other property described in subparagraph (A) of this paragraph, and (C) installment obligations acquired in respect of property (other than property described in subparagraph (A)) sold or exchanged before the date of the adoption of such plan of liquidation.↩