T.C. Memo. 2000-66

UNITED STATES TAX COURT

LAURA A. LOVELAND ESPINOSA, A.K.A. LAURA A. LOVELAND, TRUSTEE OF
THE LAURA A. LOVELAND TRUST, TRANSFEREE, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20338-97.                    Filed March 1, 2000.

        In July of 1990, P's husband, T, transferred to
her for no consideration shares of stock with a value
of $53,828.12.  Prior to that time, T had failed to
file Federal income tax returns or to pay such taxes
for years including 1981, 1982, 1984, and 1985.  T
subsequently filed returns for the foregoing years in
November of 1993.  On July 17, 1997, without having
sent a notice of deficiency to T based upon the filed
returns but after previous attempts to collect from T
had yielded insufficient funds to satisfy his tax
debts, R issued to P a notice of transferee liability
pursuant to sec. 6901, I.R.C.  R premises transferee
liability on the grounds that the transfer of stock
from T to P was a fraudulent conveyance under the
California Uniform Fraudulent Transfer Act, Cal. Civ.
Code secs. 3439 through 3439.12 (West 1997).

Held:  R's assertion of transferee liability is not barred by the period of limitations set forth in the California Uniform Fraudulent Transfer Act. Bresson v. Commissioner, 111 T.C. 172 (1998), followed.
Held, further, P is liable as a transferee to the extent of the value of the assets received, plus interest thereon as provided by law.


Joseph E. Mudd and Jeri L. Gartside, for petitioner.

Jeffrey A. Schlei, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  Respondent determined that petitioner is liable to the extent of $73,500.50 as a transferee of assets from Frederick A. Espinosa for the following income tax deficiencies and additions to tax, for the taxable years 1981, 1982, 1984, and 1985:

|  |  | Additions To Tax | | | |
| --- | --- | --- | --- | --- | --- |
| Taxable Year | Net[1] Tax Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6654 | Sec. 6661 |
| 1981 | $56,172 | $14,043 | $5,814 | $3,153 | -- |
| 1982 | 50,077 | 12,519 | 5,655 | 3,341 | $10,015 |
| 1984 | 5,169 | 1,292 | 9,382 | 2,287 | 5,465 |
| 1985 | 14,671 | 3,668 | 9,661 | 1,668 | 8,194 |

[1] The statement attached to the notice of transferee liability explaining petitioner's liability for Mr. Espinosa's taxes expresses the deficiency in terms of the "net" deficiency existing after subtraction of withholding.  We adopt this convention throughout our opinion.

Respondent additionally asserted in the notice of transferee liability that the interest due from Mr. Espinosa on the above

amounts as of July 17, 1997, was calculated at $135,446, $97,109, $19,476, and $21,900 for 1981, 1982, 1984, and 1985, respectively.

For reasons hereinafter stated, Mr. Espinosa's 1980 taxable year is also involved in the present controversy. We consider facts related to the 1980 year to the degree necessary to evaluate petitioner's liability with respect to the years before the Court. See sec. 6214(b).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues remaining for decision are:

(1) Whether assessment of transferee liability against petitioner is barred by the period of limitations set forth in section 3439.09 of the California Civil Code (West 1997); and, if not,

(2) whether petitioner is liable as a transferee pursuant to section 6901 for the unpaid Federal income taxes and additions to tax of Mr. Espinosa.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

Laura A. Loveland Espinosa resided in San Diego, California, at the time of filing her petition in this case.  As trustee of the Laura A. Loveland Trust, a grantor trust, she is the transferee of assets received from her husband, Frederick A. Espinosa.

Background of Mr. Espinosa

Mr. Espinosa studied biology and chemistry in college and became involved in the pharmaceutical and biotechnology industry following graduation.  Prior to 1977, he held management positions within General Electric Company in Georgia and Wisconsin.  From 1977 to 1983, he was employed in executive capacities by Johnson and Johnson, first at a Boston subsidiary and then in New Jersey.  In 1983, Mr. Espinosa relocated to California and served as president of biotechnology companies in San Francisco and Palo Alto.  While working in San Francisco, from approximately the latter part of 1983 to the middle of 1986, Mr. Espinosa maintained an apartment at 2200 Sacramento Street, Number 604, San Francisco, California, where he stayed during the week.  On weekends, he commuted to Laguna Beach, California, where he resided with his wife at that time, Colleen Espinosa, and his children.  In July of 1986, Mr. Espinosa and Colleen Espinosa were divorced.

On September 10, 1988, Mr. Espinosa married petitioner, and they continued to reside in Laguna Beach.  In July of 1989, Mr.

Espinosa joined Lidak Biopharmaceuticals, later known as Lidak Pharmaceuticals (Lidak), as its president and chief executive officer. During the latter part of 1989, Mr. Espinosa purchased 106,000 shares of stock in Lidak. Then, on July 31, 1990, Mr. Espinosa transferred all of his Lidak shares to petitioner's grantor trust. The transfer was made for no consideration other than love and affection, at a time when Mr. Espinosa was involved in a dispute with Lidak's chairman of the board over a project that the company was funding. In September of 1991, Mr. Espinosa was terminated from his position at Lidak and has since been unemployed.

Assets of Mr. Espinosa

All significant assets owned by Mr. Espinosa at the time of his 1986 divorce were awarded to Colleen Espinosa. During the period of 1989 through 1990, his assets consisted of two checking accounts, a savings account, two certificates of deposit, and a brokerage account. Although the record does not reveal the status of these accounts on July 31, 1990, petitioner offered financial statements reflecting the following balances on the dates indicated:

| Account Type | Date | Account Balance |
|---|---|---|
| Checking Account (La Jolla Bank) | 8/12/90 | $7,763.93 |
| Checking Account (First Interstate Bank) | 3/8/90 | 36,448.03 |

| | | |
|---|---|---|
| Savings Account (First Interstate Bank) | 3/8/90 | 1,299.67 |
| Certificate of Deposit (Great American First Savings) | 8/28/89 | 10,461.23 |
| Certificate of Deposit (Columbia Federal Savings & Loan) | 9/27/89 | 21,417.21 |
| Brokerage Account (Shearson Lehman Hutton) | 11/26/89 | 12,855.39 |

As of the time of trial, the above accounts had been dissipated. Mr. Espinosa also did not own real property or a vehicle and, since his termination from Lidak, has had no source of income.

Tax Liability of Mr. Espinosa

Mr. Espinosa did not file timely Federal income tax returns for the years 1980, 1981, 1982, 1983, 1984, or 1985. His last previous return was filed from either Boston or New Jersey during his employment with Johnson and Johnson. In late 1987, the Internal Revenue Service (IRS) began an investigation into the potential tax liability of Mr. Espinosa. This examination culminated with statutory notices of deficiency for taxable years 1980 through 1985 being sent to Mr. Espinosa. Respondent's certified mail list indicates that the notices were mailed on April 5, 1989, and were addressed to "2200 Sacramento, Number 604", "San Francisco, CA 94115-2305".

At the time the notices were issued, the IRS file on Mr. Espinosa contained an entry, dated January 19, 1988, which stated

that a form letter previously sent to him had been returned showing his address as "1278 Glenneyre #15", "Laguna Beach, Ca. 92651". Subsequent to mailing the deficiency notices, the IRS sent to the Laguna Beach postmaster a document on May 8, 1989, requesting current address information for Mr. Espinosa and received in response "375 Broadway #214", "Laguna Beach, Ca. 92651". During this period, Mr. Espinosa maintained a post office box at the Glenneyre address and resided at the Broadway address. IRS records do not indicate that the deficiency notices were re-sent to either of these locations. The taxes set forth in the notices were assessed against Mr. Espinosa on November 27, 1989, and lien notices were thereafter recorded in three southern California counties.

In late 1990, an IRS agent contacted Mr. Espinosa at Lidak, and the two later met to discuss his tax liabilities. As a result of this meeting, Mr. Espinosa began making payments to the IRS on January 3, 1991. The payments ceased at the end of 1991, when his termination from Lidak left him with no source of income. The only further payment was made on July 15, 1993. The payments totaled between $93,000 and $94,000. Respondent applied all payments to Mr. Espinosa's 1980 liability for income tax, additions to tax, and interest, as determined by respondent in the 1989 deficiency notices.

After being advised by his attorney that submission of tax returns for the delinquent years would reduce his tax liability, Mr. Espinosa filed returns for 1981, 1982, 1984, and 1985 on November 3, 1993. (The record does not contain copies of returns filed, if any, for years other than those upon which transferee liability is based.) The 1981 return showed a total tax of $118,932 but, after subtracting $60,098 for withheld tax and $80,967 claimed on line 56 for "1981 estimated tax payments and amount applied from 1980 return", indicated that Mr. Espinosa was entitled to a refund of $22,133. The 1982 return reflected a total tax of $113,091 and, after subtraction of $63,015 for withheld tax and $21,131 for the alleged overpayment carried over from 1980 and unused in 1981 (the $1,002 discrepancy is not explained by the record), a tax due of $28,945. For 1984, a total tax of $36,386 less $31,217 for withholding resulted in an amount owed of $5,169. Likewise, total tax of $28,782 minus $13,511 for withholding led to tax liability of $15,271 for 1985. The IRS did not issue notices of deficiency to Mr. Espinosa based upon these returns.

Tax Liability of Petitioner

On July 17, 1997, the IRS mailed a notice of transferee liability to petitioner in her capacity as trustee of the Laura A. Loveland Trust and transferee of Mr. Espinosa's Lidak stock. The asserted liability of $73,500.50 equaled the fair market

value of the shares as estimated by the IRS.  The parties have since stipulated that the value of the shares on the date of the transfer was $53,828.12.

### OPINION

We must decide whether petitioner may be held liable as a transferee for unpaid taxes of Mr. Espinosa, from whom she received assets worth $53,828.12.

## I.  General Rules

### A.  Transferee Liability

Section 6901, which establishes a procedure whereby respondent may assess and collect from a transferee of property the unpaid taxes of the transferor, reads in part as follows:

SEC. 6901.  TRANSFERRED ASSETS.

(a) Method of Collection.--The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) Income, estate, and gift taxes.--

(A) Transferees.--The liability, at law or in equity, of a transferee of property--

(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

\*     \*     \*     \*     \*     \*     \*

The foregoing section thus does not create or define a substantive liability; rather, it merely provides a remedy for

enforcing the existing liability of the transferor. See Commissioner v. Stern, 357 U.S. 39, 42 (1958); Coca-Cola Bottling Co. v. Commissioner, 334 F.2d 875, 877 (9th Cir. 1964), affg. 37 T.C. 1006 (1962); Bresson v. Commissioner, 111 T.C. 172, 179 (1998); Gumm v. Commissioner, 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). The substantive question of whether or to what extent a particular transferee may be held liable at law or in equity for a transferor's obligation is determined by State law. See Commissioner v. Stern, supra at 45; Coca-Cola Bottling Co. v. Commissioner, supra at 877; Bresson v. Commissioner, supra at 180; Gumm v. Commissioner, supra at 485. Since the transfer of stock at issue here occurred in California, California law governs. See Coca-Cola Bottling Co. v. Commissioner, supra at 877; Bresson v. Commissioner, supra at 180.

The California Uniform Fraudulent Transfer Act, applicable to transfers made on or after January 1, 1987, includes provisions imposing transferee liability on grounds of both actual and constructive fraud. See Cal. Civ. Code secs. 3439.04, 3439.05, 3439.12 (West 1997). A transfer is actually fraudulent when made "With actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code sec. 3439.04(a) (West 1997). As regards constructive fraud, the provision of California law most relevant here states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. [Cal. Civ. Code sec. 3439.05 (West 1997).]

This statute has been interpreted in the context of tax disputes to require proof of four elements as a prerequisite to imposing transferee liability:  (1) The transferor owed a debt to the IRS, (2) the claim of the IRS arose before the transfer was made, (3) the transferor made the transfer without receiving reasonably equivalent value in exchange, and (4) the transferor was insolvent at the time of the transfer or became insolvent as a result of the transfer.  See Locke v. Commissioner, T.C. Memo. 1996-541, affd. without published opinion 152 F.3d 927 (9th Cir. 1998); O'Sullivan v. Commissioner, T.C. Memo. 1994-17.

Transferee liability is generally limited to the value of the assets received from the transferor.  See Gumm v. Commissioner, supra at 480; Locke v. Commissioner, supra. However, where the value of the assets transferred is less than the tax debt of the transferor, the liability of the transferee for interest from the date of the transfer to the date of the notice of transferee liability is determined by State law.  See Stansbury v. Commissioner, 104 T.C. 486, 493 (1995); Swinks v.

Commissioner, 51 T.C. 13, 19 (1968); Estate of Stein v. Commissioner, 37 T.C. 945, 961 (1962); O'Sullivan v. Commissioner, supra.

Section 3287(a) of the California Civil Code (West 1997) reads: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day". Respondent therefore has the right under California law to interest on the value transferred, at the legal rate specified by State statute, from the date the transfer was made, July 31, 1990, until July 17, 1997, the date of the notice of transferee liability. See O'Sullivan v. Commissioner, supra. Additionally, a transferee is liable for interest accruing at the statutory rate as prescribed under sections 6601 and 6621 of the Internal Revenue Code for the period following the issuance of the transferee notice until the liability established thereby is paid. See Estate of Stein v. Commissioner, supra at 959; O'Sullivan v. Commissioner, supra.

Respondent bears the burden of proving all elements necessary to establish the taxpayer's liability as a transferee, but not to show that the transferor was liable for the tax. See sec. 6902(a); Rule 142(d).

B.  Period of Limitations

    Section 6901(c) provides that the period of limitations for assessment of liability against a transferee extends "1 year after the expiration of the period of limitation for assessment against the transferor".  The period for assessment against the transferor, in turn, is set forth in section 6501 and generally runs for 3 years from the filing of the tax return.  See sec. 6501(a).  The period is of unlimited duration if no return is filed.  See sec. 6501(c)(3).  Federal law thus allows at least 4 years, measured from the date a return is filed, in which a notice of transferee liability may be issued.

    In contrast, section 3439.09 of the California Civil Code (West 1997) states as follows:

>     A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought * * *
>
>         (a) Under subdivision (a) of Section 3439.04, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.
>
>         (b) Under subdivision (b) of Section 3439.04 or Section 3439.05, within four years after the transfer was made or the obligation was incurred.
>
>             *    *    *    *    *    *    *

Hence, State law establishes a period of limitations for actions under the California Fraudulent Transfer Act that expires 4 years after the date of the transfer, with a possibility for extension in the case of actual, as opposed to constructive, fraud.

II.  Contentions of the Parties

Respondent contends that transferee liability may be imposed upon petitioner pursuant to section 6901 on the grounds that Mr. Espinosa's transfer of stock was both actually and constructively fraudulent under California law.  According to respondent, because Mr. Espinosa transferred his Lidak shares to petitioner for no consideration, at a time when his unpaid taxes exceeded the value of his remaining assets, the transfer was, at minimum, constructively fraudulent.  Respondent further maintains that assertion of transferee liability is not barred by any statute of limitations; the notice of transferee liability was sent within the time period prescribed by the Internal Revenue Code, and this Federal limitations period is not affected by differing limits under State law.

Conversely, petitioner argues that respondent is precluded from making a transferee assessment, at least on any basis other than the taxes stated as due in the filed returns, because no valid deficiency determination or assessment exists against Mr. Espinosa.  Petitioner contends that because the 1989 notices of

deficiency were not sent to Mr. Espinosa's last known address, they are invalid and cannot be used to establish Mr. Espinosa's tax liability.

Petitioner further asserts that because no deficiency notices were issued with respect to the returns filed by Mr. Espinosa in 1993, and because the period for issuing such notices has expired, Mr. Espinosa cannot be said to owe taxes beyond the figures reflected in those returns. Since the amount so shown as owing is less than the alleged value of Mr. Espinosa's remaining assets on the date of the transfer, petitioner contends that there can be no finding of constructive fraud. Petitioner also argues that the requisite intent for actual fraud is lacking.

Lastly, petitioner maintains that the provision for extinguishment set forth in the California Uniform Fraudulent Transfer Act governs so as to bar respondent's assertion of transferee liability.

We conclude that the purported lack of a deficiency determination or assessment against the transferor poses no barrier to an assertion of transferee liability. We further agree with respondent that the transfer to petitioner was fraudulent under section 3439.05 of the California Civil Code, and we find that petitioner has failed to establish that Mr. Espinosa is not presently liable for the underlying unpaid taxes.

Hence, because we also hold that the Federal limitations period is applicable in this case, transferee liability may properly be asserted against petitioner.

III.  Application

A.  Period of Limitations

As a threshold procedural matter, we first focus on the question of whether the State period of limitations prevails over the Federal so as to bar respondent's assertion of transferee liability and to eliminate any need for further consideration of the related substantive issues.

Respondent contends that because Mr. Espinosa filed his returns with respect to 1981, 1982, 1984, and 1985 on November 3, 1993, the period of limitations for assessment of transferee liability against petitioner extended to November 3, 1997. Hence, the notice of transferee liability sent on July 17, 1997, was timely.  Petitioner, in contrast, argues that the provisions set forth in the California Civil Code for extinguishment 4 years after the date of transfer should control.  According to petitioner, since the notice of transferee liability was not sent until nearly 7 years after the July 31, 1990, transfer, respondent's right to pursue any such liability on the basis of a fraudulent conveyance under California law has been extinguished.

This precise issue was, however, decided unfavorably to petitioner's position in Bresson v. Commissioner, 111 T.C. 172

(1998).  There, this Court held that "respondent is not bound by the limitations period in California's UFTA in seeking to assert or assess transferee liability against * * * [the transferee] under section 6901."  Id. at 190.  Rather, "section 6901(c) is the applicable limitations period to which respondent is bound in asserting transferee liability".  Id.  Given this precedent and for the reasons stated therein, we likewise hold here that respondent has issued a timely notice of transferee liability.

B.  Transferee Liability

    1.  Necessity for Deficiency Determination or Assessment
    Against Transferor

Preliminary to our discussion of whether respondent has established the substantive elements of transferee liability, we address whether, as petitioner appears to contend, the purported lack of a valid deficiency notice or assessment against the transferor in any way inhibits respondent's determinations of liability for taxes, or additions to tax, against a transferee. To answer this inquiry in the affirmative, however, would be contrary both to congressional intent as evidenced by legislative history and to existing case law.

Legislative history deals explicitly with the procedural requirement of a notice of deficiency in contexts involving transferee liability:

> Section 274(a) [predecessor of sections 6212 and
> 6213] requires notice of a deficiency in a tax to be

> sent the taxpayer before further proceedings for collection of the tax liability are continued.  The section, however, in terms applies only to a deficiency in a tax and does not apply to the liability of a transferee in respect of the tax of the taxpayer.  Therefore, in proceedings against the transferee, notice need not be given the taxpayer under section 274(a).  However, under the substitute agreed to by the conferees, the liability of the transferee is collected in the same manner as the liability for tax.  Section 274(a) is thus incorporated by reference, but the result of such reference is that for procedural purposes the transferee is treated as a taxpayer would be treated, and under section 274(a) notice would be sent to the transferee (and not the taxpayer) in proceedings to enforce the liability of the transferee. [H. Conf. Rept. 356, 69th Cong., 1st Sess. (1926), 1939-1 C.B. (Part 2) 372.]

Case law is likewise unequivocal in rejecting arguments that a notice of deficiency to or assessment against the transferor must precede enforcement of liability against the transferee. See Kuckenberg v. Commissioner, 309 F.2d 202, 206 (9th Cir. 1962), affg. on this issue 35 T.C. 473 (1960); Bresson v. Commissioner, supra at 178; Gumm v. Commissioner, 93 T.C. 475, 484 (1989); Maher v. Commissioner, 55 T.C. 441, 457 (1970), affd. on this issue 469 F.2d 225 (8th Cir. 1972); Cleveland v. Commissioner, 28 B.T.A. 578, 580-581 (1933), affd. 77 F.2d 184 (5th Cir. 1935).  The rule as developed by this Court is that "the Commissioner is not required to issue a notice of deficiency or to make an assessment against the transferor where efforts to collect delinquent taxes from a transferor would be futile." Bresson v. Commissioner, supra at 178.  The following, oft-quoted rationale underlies this position:

A deficiency is not created by any act of the respondent, but by the facts and the legal significance thereof as set out in the taxpayer's income tax return. The so-called "60-day [now 90-day] letter" is no more than notice to the taxpayer that the amount of a deficiency disclosed by its return has been determined under the applicable statute. In our opinion no assessment, notice, or other act of the respondent is necessary to establish liability for income taxes. We think that any deficiency existing at the date of a transfer of assets is a liability against such assets under the trust fund theory. * * * [Cleveland v. Commissioner, supra at 580-581 (fn. ref. omitted); see also Maher v. Commissioner, supra at 457; Kuckenberg v. Commissioner, 35 T.C. at 483.]

Hence, the relevant procedural requirement for a proper assertion of transferee liability is that respondent send to the transferee a notice under section 6901 which serves to "inform the transferee of the extent and nature of the tax deficiency which he is claiming against the transferor." Kuckenberg v. Commissioner, supra at 483-484. Moreover, this rule is equally applicable regardless of whether respondent is asserting that the transferor is liable only for unpaid taxes and deficiencies or whether respondent is claiming that the transferor is liable for additions to tax as well. See Bresson v. Commissioner, supra at 173; Gumm v. Commissioner, supra at 475; Kuckenberg v. Commissioner, supra at 474.

We further note that the Court of Appeals for the Ninth Circuit, to which appeal in the instant case would normally lie, has adopted the foregoing principle. See Kuckenberg v. Commissioner, 309 F.2d at 202. In affirming the Tax Court on the

question of whether a deficiency determination or assessment against the transferor must precede imposition of transferee liability, the Court of Appeals in <u>Kuckenberg v. Commissioner</u>, 309 F.2d at 206, summarily disposed of the transferees' contentions as follows: "they assert that the United States does not have the status of a creditor since no ninety-day letter was sent to the corporation. However, the government need not take futile assessment action against a taxpayer without assets."

From these authorities, we conclude that the notice of transferee liability received by petitioner is not rendered ineffective either by the alleged invalidity of the notices of deficiency sent to Mr. Espinosa in 1989 or by respondent's failure to issue deficiency notices to Mr. Espinosa with respect to the returns filed in 1993. As regards the 1989 notices, these documents neither created nor impacted the underlying tax debt. Hence, their existence and any procedural irregularities in their issuance are irrelevant to the question of whether a transfer is constructively fraudulent, and, as will be seen below, we find it unnecessary to reach the issue of actual fraud.

With respect to the failure to send Mr. Espinosa notices of deficiency based on the filed returns, the law referenced above does not require respondent first to take useless action against a transferor. Here, Mr. Espinosa had earned no income since 1991, and respondent was aware that Mr. Espinosa's financial

situation had forced him to cease making payments on his tax liabilities some years earlier. Even the bank and brokerage accounts he once possessed had been dissipated. At the time of trial, Mr. Espinosa still owned neither a residence nor a car, and nothing in the record would indicate any other potential assets. Respondent was entitled to proceed directly against petitioner as transferee in determining and assessing deficiencies and additions to tax. Because the notice sent to petitioner informs her of the nature and extent of the deficiencies and additions being claimed against Mr. Espinosa, it constitutes a proper assertion of transferee liability.

2. Existence of Fraudulent Transfer

Having thus determined that respondent's efforts to impose transferee liability are not defeated by absence of prior procedural steps, we next consider whether respondent has sustained the burden of establishing that Mr. Espinosa's transfer of stock to petitioner qualifies as fraudulent pursuant to California law. We begin our examination of this question with the issue of constructive fraud, as a finding thereof will make unnecessary further probing of Mr. Espinosa's subjective intent.

Turning to the first of the four elements required to establish a constructively fraudulent transfer under section 3439.05 of the California Civil Code, we conclude that Mr. Espinosa owed, and continues to owe, a debt to the IRS. At the

time the transfer was made, Mr. Espinosa had paid no taxes, beyond withholding, for the years 1980 through 1985. Yet even his own subsequently filed returns indicate that he owed taxes for some of these years, and the parties stipulated that "The Internal Revenue Service was a creditor of Frederick Espinosa at the time of the transfer of the Lidak stock."

Moreover, no evidence shows that the taxes so reflected as due have been paid. To the extent that statements made by petitioner on brief can be read to argue that the source of the claimed $80,967 overpayment for 1980 was unrelated to the $93,000 to $94,000 in payments made to the IRS in 1991, and that these payments are therefore sufficient to eliminate any remaining liabilities, we find such a position to be insupportable on this record.

Respondent's transcript of account for Mr. Espinosa's 1980 taxable year records all activity with respect to the account dating from the 1988 preparation by the IRS of a substitute return for Mr. Espinosa as a nonfiler. However, until the subsequent payments of $93,000 to $94,000 commencing in 1991, the only credit reflected therein is a $38,265 credit for withheld taxes and excess FICA. The transcript shows neither credit for an overpayment from a prior year nor remittance of any additional sums to the IRS beyond the $93,000 to $94,000. Hence, since these payments are the only ones made by Mr. Espinosa and applied

to his 1980 tax year, they are likewise the sole potential source for the alleged overpayment. We find that Mr. Espinosa's status was and is that of a debtor to the IRS.

The above-quoted stipulation characterizing the IRS as a creditor of Mr. Espinosa at the time of the transfer is likewise sufficient to establish the second element, which requires the IRS's claim to have arisen prior to the transfer. In addition, an identical result would be demanded, regardless of the stipulation, by existing law. Tax liabilities accrue on the due date of the tax return, and if such liabilities are not paid at that time, the IRS is considered to be a creditor as of the close of the applicable tax period. See Swinks v. Commissioner, 51 T.C. 13, 17 (1968); Locke v. Commissioner, T.C. Memo. 1996-541; O'Sullivan v. Commissioner, T.C. Memo. 1994-17; LaMothe v. Commissioner, T.C. Memo. 1990-63. Here, since the transfer in July of 1990 took place more than 4 years after Mr. Espinosa's tax return was due for the most recent of the tax periods upon which transferee liability is based, the IRS' claim predated the transfer by a wide margin.

The third requirement, that the transferor must have received no reasonably equivalent value in exchange, is once again established by a stipulation of the parties: "The transfer of the Lidak stock was made for love and affection. The parties stipulate that love and affection is not adequate consideration."

With respect to the fourth element, which mandates insolvency at the time or as a result of the transfer, a debtor is insolvent under California law "if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." Cal. Civ. Code sec. 3439.02(a) (West 1997). Respondent contends that Mr. Espinosa's extensive tax liabilities as of the date of the transfer outweighed his minimal assets to a degree more than sufficient to meet this test. Petitioner, in contrast, claims that because the deficiency notices were invalid, Mr. Espinosa's debts for purposes of the insolvency calculation are limited to the approximately $50,000 ($28,945 + $5,169 + $15,271 = $49,385) shown as owing on the returns filed in 1993. Petitioner further points to the documentary evidence produced at trial reflecting assets with a total value of $90,245.46 and states on brief that Mr. Espinosa's remaining property was worth "approximately $100,000" at the time of the transfer. Therefore, according to petitioner, Mr. Espinosa's financial status was one of solvency.

We conclude, however, that even if we accept the records offered by petitioner, which we note are somewhat lacking in contemporaneity, as accurately representing Mr. Espinosa's assets in July of 1990, we cannot agree that Mr. Espinosa was solvent. The $93,000 to $94,000 in payments to the IRS were not made until 1991, after the transfer. Hence, at minimum and without regard

to the contested notices of deficiency or any additions to tax or interest, the tax liability in July of 1990 must have been at least the $50,000 shown as still owing plus the between $93,000 and $94,000 paid subsequent to the transfer but prior to filing the returns. Even these figures when combined exceed the purported $90,000 to $100,000 in assets remaining after the transfer.

Furthermore, because a notice of deficiency does not, as explained above, create the underlying debt, the alleged lack of a valid notice has no bearing upon Mr. Espinosa's liability as of July 1990 either for income taxes or for statutory additions to tax or interest then accrued on his unpaid balance. Any such additions or interest, which would hardly be insignificant after multiple years of failing to file a return despite owing taxes, are thus properly considered as increasing the amount by which Mr. Espinosa was indebted to the IRS in July of 1990. We find that at the time of the transfer of the Lidak shares to petitioner, Mr. Espinosa was or was rendered insolvent. We therefore conclude that respondent has sustained the burden of establishing each element necessary to support imposition of transferee liability on the basis of a constructively fraudulent transfer under California law, and we need not reach the issue of actual fraud.

3.  Liability for Underlying Tax

Having decided that the July 1990 transfer was fraudulent, we turn to the question of whether petitioner may nonetheless reduce or avoid liability by proving that Mr. Espinosa does not presently owe the amounts stated in the notice of transferee liability.  Petitioner bears the burden of establishing that respondent's determinations are erroneous.  See Rule 142(a).  On this record, however, evidence offered by petitioner is insufficient to overcome the presumption of correctness afforded to respondent's determinations, at least to the degree that would be necessary to render her liable for less than the value of the assets transferred.

The net deficiencies stated in the notice of transferee liability generally parallel the balances shown on Mr. Espinosa's returns, with the major exception being that no credit was given for the claimed $80,967 overpayment.  The only evidence produced by petitioner of any payments that could reduce Mr. Espinosa's tax liability was the statement of his account revealing that $93,000 to $94,000 had been received by respondent.  Petitioner did not, however, provide a copy of the return Mr. Espinosa claims to have filed for 1980 or any other evidence of his 1980 taxes.  We consequently have no basis for concluding that the payments were misapplied and should more properly be credited against the stated net deficiencies for 1981, 1982, 1984, or

1985. The net deficiencies stated in the notice of transferee liability, which petitioner's evidence falls short of disproving, are thus more than adequate to render petitioner liable for the full stipulated value, $53,828.12, of the transferred stock. We need not reach the issue of whether Mr. Espinosa is also liable for the additions to tax set forth in the transferee notice.

We therefore conclude that petitioner has failed to sustain her burden of showing that Mr. Espinosa does not currently owe taxes to the IRS in an amount at least equal to the agreed value of the Lidak shares. Hence, we hold that petitioner is liable to the extent of $53,828.12, plus interest thereon in accordance with California and Federal law.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.