VIOLA A. LaMOTHE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Mothe v. Commissioner
Docket Nos. 15162-83, 12967-87
United States Tax Court
T.C. Memo 1990-63; 1990 Tax Ct. Memo LEXIS 63; 58 T.C.M. (CCH) 1358; T.C.M. (RIA) 90063; February 12, 1990; As Corrected February 14, 1990 John L. Sullivan and Joyce E. York, for the petitioner. James A. Kutten, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a notice of deficiency dated April 11, 1983, addressed to the Estate of Charles J. LaMothe, Deceased, Ms. Joan Bebee, Personal Representative, and Mrs. Viola A. LaMothe, Surviving Spouse, respondent determined a deficiency of $ 44,749 in the Federal income tax of Charles J. LaMothe, Deceased, and his Surviving Spouse, Viola A. LaMothe, for the year 1979. Thereafter separate timely petitions were filed with this Court by the Estate of Charles J. LaMothe, Deceased, Joan Bebee, Personal Representative, in docket No. 16982-83, and by Viola A. LaMothe in docket No. 15162-83. Pursuant to the agreement of the parties, a stipulated decision was entered on March 3, 1986, in docket No. 16982-83 to the effect that the correct income tax deficiency of the Estate of Charles J. LaMothe, Deceased, for the year 1979 is $ 18,060. *65 The deficiency was assessed by respondent against the Estate of Charles J. LaMothe on April 28, 1986, and has not been paid. In a notice of transferee liability, dated April 22, 1987, respondent determined that Viola A. LaMothe was liable as a transferee of the assets of Charles J. LaMothe, Deceased, for the agreed but unpaid income tax deficiency of the Estate of Charles J. LaMothe for the year 1979 in docket No. 16982-83 of $ 18,060, plus interest as provided by law. Viola A. LaMothe, as the transferee of Charles J. LaMothe, timely filed a petition in this Court on May 15, 1987, in docket No. 12967-87. By order dated September 28, 1987, petitioner's cases at docket No. 15162-83 and docket No. 12967-87 were consolidated. After certain concessions set forth in the parties' stipulation of settled issues, the only issues remaining for decision are: (1) whether petitioner in docket No. 15162-83 qualifies for innocent spouse relief pursuant to section 6013(e)[1] from the deficiency for 1979 which the parties agree is $ 18,060; and (2) whether petitioner in docket No. 12967-87 is liable as a transferee of the Estate of Charles J. LaMothe for the deficiency of $ 18,060 for 1979 plus *66 interest as provided by law. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. Their stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. Petitioner was a resident of St. Louis, Missouri, when she filed her petitions in these cases. Facts Relating to the Innocent Spouse Issue. On February 17, 1976, petitioner married Charles J. LaMothe. In April of 1980 they filed a joint income tax return for the taxable year 1979. Mr. LaMothe died on June 5, 1980. He was survived by his widow, petitioner herein, and two children by a previous marriage, Joan LaMothe Bebee and Charles Rodney LaMothe. On the joint return for 1979 deductions for losses were claimed by Mr. LaMothe with respect to his interest in two partnerships, Colonial Partners, Ltd., and Gateway Partners, Ltd., which were subsequently included by respondent in an audit project known as the Cole-West Tax Shelter. The claimed deductions were as follows: Partnership
Claimed Deductions
Colonial Partners, Ltd.
$ 37,500.00
Gateway Partners, Ltd.
40,562.00
Total
$ 78,062.00
*67 In his notice of deficiency respondent disallowed the above deductions in their entirety. The Cole-West Tax Shelter (also known as Dallas Realty Tax Shelter) consisted of 285 tiered partnerships, including Colonial Partners, Ltd., and Gateway Partners, Ltd. The partnerships invested in commercial real estate. With respect to the Cole-West Tax Shelter, respondent audited 20 of its 285 partnerships pursuant to an audit plan to be based upon a statistical sampling which plan was agreed to in advance by respondent and the project's general partner. At the conclusion of his audit, the adjustments proposed by respondent to these 20 partnerships consisted of (1) adjustments to the depreciable basis of partnership real property and (2) adjustments to partnership expenses such as partnership fees, management fees, guarantee fees, interest, and start-up costs. Using the 20 audits as a statistical sample respondent offered to settle the entire project by conceding 56 percent of all Cole-West deductions or losses claimed by the various partners. Neither Colonial Partners nor Gateway Partners were included in the 20 partnerships audited by respondent. Consequently, the record contains *68 no evidence of the actual items which comprise the disallowed portion of their adjustments. In the settlement of Mr. LaMothe's case (docket No. 16982-83), his estate accepted respondent's offer and the parties stipulated that Mr. LaMothe was entitled to 56 percent of the deductions claimed for partnership losses on the 1979 joint return. The settlement was computed as follows: Amounts
Portion to
Disallowed
be
Portion to
in Statutory
Disallowed
be Allowed
Notice of
Per
Per
Partnership
Deficiency
Settlement
Settlement
Colonial
Partners,
Ltd.
$ 37,500.00
$ 16,500.00
$ 21,000.00
Gateway
Partners,
Ltd.
40,562.00
17,847.00
22,715.00
$ 78,062.00
$ 34,347.00
$ 43,715.00
In their stipulation of settled issues the parties in this matter have agreed that if respondent prevails on the innocent spouse issue in docket No. 15162-83, the correct amount of the deficiency for 1979 is $ 18,060, a duplication of the amount agreed to by the parties in docket No. 16982-83. After her husband's death, petitioner received the following as the beneficiary of insurance payable at his death, as the surviving tenant of property held *69 jointly with her husband, or by bequest under his will: Description
Value
House and lot, 4 Country Aire, Town and
County, MO 63131 (family residence),
joint property.
$ 190,000.00
10 units First Trust INSD Municipal
Bonds, 52 Series, Semi-Annual, OTC,
joint property.
10,529.75
Joint checking account: Acct. No. 23-
27-139 Mercantile Trust Company National
Association, 8th and Locust, St. Louis,
MO 63166.
21,865.23
Anchor National Life Insurance Company,
single premium deferred annuity, policy
number 294891, insurance.
24,338.77
Cash bequest.
225,000.00
Total
$ 471,733.75
After Mr. LaMothe's death, petitioner also received per year $ 27,000 for seven years, or a total of $ 189,000, pursuant to two employment contracts which Charles J. LaMothe had with former employers. Facts Relating to the Transferee Issue. Mr. LaMothe's will directed, among other things, that his surviving spouse, Viola A. LaMothe, was to receive a marital bequest in the amount of $ 250,000. His will was admitted to probate in the Circuit Court of St. Louis County, Missouri. His daughter, Joan LaMothe Bebee, qualified *70 as the Executrix and Personal Representative of the estate. In an Inventory and Appraisement filed on June 8, 1981, with the Circuit Court, the Personal Representative reported personal property in the estate with a value of $ 420,856.46. In her First Annual Settlement filed on June 15, 1981, the Personal Representative reported total receipts by the estate of $ 878,870.06 and disbursements of $ 640,884.71, leaving a balance of $ 237,985.35 in the estate. In her Third Annual Settlement filed on June 27, 1983, the Personal Representative reported receipts by the estate totaling $ 556,675.16 and disbursements of $ 556,653.21, leaving a balance in the estate of $ 21.95. Included in the disbursements was a payment of Federal estate tax of $ 222,951.54 and interest on the Federal estate tax of $ 16,226.28. With respect to the marital bequest to petitioner, Joan LaMothe Bebee, the Personal Representative, recognized and did not contest the intentions of her father, but did not immediately pay the bequest because of a lack of funds in the probate estate. Therefore, on or about June 15, 1983, petitioner filed a will construction action in the Circuit Court to compel the estate to pay *71 her bequest. On February 8, 1984, the Judge of the Probate Division of the Circuit Court entered a Consent Order and Judgment which provides, in part, as follows: THIS COURT HEREBY construes the will of Charles J. LaMothe to provide that the surviving spouse Viola LaMothe shall receive a bequest from his estate in the pecuniary sum of $ 250,000.00 (the other formula provisions of the said Article being inapplicable) and the Executrix is hereby ordered to pay from the estate the sum of $ 250,000.00 to Viola LaMothe on or before March 1, 1984, in full and complete satisfaction of her marital bequest. This Court shall retain jurisdiction over this matter until said amount has been paid and an acknowledgment of payment filed with this Court by Viola LaMothe, or on her behalf. It is further ordered that if the Executrix fails to make such payment by such date then this Court shall forthwith, upon request of counsel for Viola LaMothe, and without further notice or hearing, enter judgment imposing a personal surcharge upon the Executrix for such amount. On January 19, 1984, and February 17, 1984, Joan LaMothe Bebee and her brother, Charles Rodney LaMothe, each made a cash advance to *72 the Estate of Charles J. LaMothe of $ 112,500. From these advances Mrs. Bebee in her capacity as Personal Representative of the estate issued two checks, each in the amount of $ 112,500, to petitioner in full satisfaction of her marital bequest. The cash advances made by Mrs. Bebee and Charles Rodney LaMothe to the probate estate to fund petitioner's marital bequest were loans and not gifts or contributions. On February 20, 1984, petitioner signed a release which provides, in pertinent part, as follows: VIOLA A. LaMOTHE does hereby acknowledge receipt from JOAN LaMOTHE BEBEE, Executrix of the Estate of Charles J. LaMothe, of the sum of Two Hundred Fifty Thousand Dollars ($ 250,000.00) paid to her in hand and further declares and acknowledges that the said sum constitutes the total of all distributions, monies, bequests, devises or other properties, of any kind whatsoever, to which she is entitled from the estate of Charles J. LaMothe in accordance with his Last Will and Testament dated the 7th day of October, 1977, now being probated in St. Louis County, Missouri. In a Fourth Annual Settlement of the estate, filed by the Personal Representative on July 14, 1984, the advances *73 made to the estate by Charles Rodney LaMothe and Joan LaMothe Bebee, and the payments made by the estate to petitioner in satisfaction of the marital bequest are reflected. The record contains no other evidence of any consideration received by the estate for the bequest. The Fifth Annual Settlement of the estate, filed on July 19, 1985, reflects partial repayments by the estate of the advances made by Charles Rodney LaMothe and Joan LaMothe Bebee in April 1985. They each received $ 52,500. The report also reflects the receipt by the estate of a Federal estate tax refund of $ 105,425.57 based on an amended estate tax return in which an additional marital deduction under section 2056 was claimed and allowed. The refund supplied the funds for the partial repayments to Charles Rodney LaMothe and Joan LaMothe Bebee. On March 13, 1986, this Court entered the stipulated decision in the case of the Estate of Charles J. LaMothe, Deceased, docket No. 16982-83, in which the parties agreed that there was a deficiency in the income tax of Charles J. LaMothe, Deceased, of $ 18,060 for 1979. On April 28, 1986, respondent assessed the deficiency, plus statutory interest against the estate *74 of Charles J. LaMothe. The assessment has not been paid. In her Sixth Annual Settlement of the estate, filed on June 26, 1986, the Personal Representative reported that the estate has no assets remaining. On April 28, 1987, respondent timely mailed his notice of transferee liability to petitioner. Prior to his death, Charles J. LaMothe as grantor had on November 6, 1967, entered into a Living Trust Agreement with his then wife, Margaret Virginia LaMothe, and his two children, Joan LaMothe Bebee and Charles Rodney LaMothe, as trustees. Upon its creation, Mr. LaMothe placed in the trust 5,910 shares of the common stock of Mid-West Terminal Warehouse Company and 14,010 shares of St. Louis Terminals Corporation. The trust, with an Addenda dated November 28, 1967, and amendments dated October 25, 1974, and January 30, 1975, continued until the death of Mr. LaMothe when, under the terms of its last amendment, the trust was to terminate with any accumulated income being distributable to his estate and with the corpus being distributable to Joan LaMothe Bebee and Charles Rodney LaMothe. OPINION Issue 1 -- Innocent Spouse. *75 Section 6013(a) allows a husband and wife to file a joint return even though one of them has no gross income and claims no deductions. In such case, the liability of each spouse is joint and several. Sec. 6013(d)(3). However, one of the parties to a joint return may be relieved of his or her liability for certain items attributable to the other spouse if the following requirements of section 6013(e)(1) are met: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *. The burden is on petitioner to prove that she is entitled to innocent spouse relief under section 6013(e). Ratana v. Commissioner, 662 F.2d 220, 224 (4th Cir. 1981); *76 Adams v. Commissioner, 60 T.C. 300, 303 (1973). Petitioner contends that she has carried her burden of proof that she has established and meets all four requirements of the statute. Respondent agrees that petitioner filed a joint return with her husband for 1979. Furthermore respondent does not dispute that there was a substantial understatement of tax on the joint return which is attributable to the partnership losses claimed by Mr. LaMothe and that in signing the joint return petitioner did not know, and had no reason to know, of the substantial understatement. Respondent contends, however, that petitioner has failed to prove that the partnership losses claimed by her husband and disallowed by respondent are grossly erroneous items within the meaning of section 6013(e)(2) and that, taking into account all the facts and circumstances of this case, it would be inequitable to hold her liable for the deficiency in tax attributable to the underpayment. "Grossly erroneous items" are defined in section 6013(e)(2) as being items omitted from gross income and claims for deduction, *77 credit, or basis in an amount for which there is no basis in fact or law. Under the plain wording of the statute the mere proof of an item of omitted income qualifies as a grossly erroneous item, but the same is not true with respect to a deduction. To qualify as a grossly erroneous item a deduction must be shown not only to be erroneous, but also to have no basis in fact or law. As we stated in Douglas v. Commissioner, 86 T.C. 758, 763 (1986), "it simply does not follow that because deductions lacking in a factual or legal basis will be disallowed, all deductions which are disallowed lack a factual or legal basis." The burden of proving that an erroneous deduction has no basis in fact or law is on petitioner. Purcell v. Commissioner, 86 T.C. 228, 240 (1986), affd. 826 F.2d 470 (6th Cir. 1987). There is no statutory definition of the phrase "no basis in fact or law." However, we have previously stated that a deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has *78 no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the [Ways and Means] committee report [on the Tax Reform Act of 1984], phony. Douglas v. Commissioner, supra at 762-763. See also Purcell v. Commissioner, 826 F.2d 470, 475 (6th Cir. 1987), affg. 86 T.C. 228 (1986). Petitioner merely asserts that "the deductions taken for Colonial Partners, Ltd. and Gateway Partners, Ltd. have no basis in law or fact and are grossly erroneous." The record, however, does not support the assertion because it contains no evidence tending to show the nature of the deductions or that they were "phony" or had no basis in law. In fact, petitioner alleged in paragraph 5 of her petition as follows: a. The business conducted by Colonial Partners, Ltd. and Gateway Partners, Ltd. consisted entirely of transactions entered into for profit. b. The expenditures and deductions *79 reported on the partnership returns reflect deductible charges included in the conduct of the business. c. The adjusted basis of Charles J. LaMothe in the partnerships are as reported during the calendar year 1979. Furthermore, in his explanation of how the parties arrived at their agreement to allow 56 percent and disallow 44 percent of the partnership losses, the appeals officer who coordinated the Cole-West Tax Shelter audit for respondent stated that in some categories of partnership expense respondent made significant concessions ranging from 50 percent to 80 percent. The settlement in which 56 percent of the losses were allowed as deductions clearly indicates that respondent concluded that the claimed deductions had a substantial basis in fact or law. The mere disallowance by respondent of deductions in his notice of deficiency does not permit petitioner to leapfrog to the conclusion that the deductions have no factual or legal basis. Douglas v. Commissioner, supra; Hawbaker v. Commissioner, T.C. Memo. 1988-406. We conclude, therefore, that *80 petitioner has failed to prove that the deductions claimed by the partnerships had no basis in fact or law. We are also satisfied from the record as a whole that it would not be inequitable to hold petitioner liable for the income tax deficiency for 1979. Mr. LaMothe died about two months after the 1979 return was filed. After his death she received a total of over $ 650,000 directly or indirectly from his estate in the form of a cash bequest, insurance proceeds, jointly owned property, and employment contracts. Under these circumstances it is logical to assume that if Mr. LaMothe had not died shortly after the return for 1979 was filed, the deficiency of $ 18,060 for 1979 would have been paid from either his separate assets or assets held jointly with petitioner. In either event it would be reasonable to further assume that the payment of the deficiency would have reduced the assets received by petitioner upon his death by a corresponding amount. Therefore, she significantly benefited from the understatement. Sec. 1.6013-5(b), Income Tax Regs. See also Estate of Krock v. Commissioner, 93 T.C. (Dec. 11, 1989). Issue 2 -- Transferee Liability *81 . A transferee has been defined as "one who takes property of another without full, fair and adequate consideration to the prejudice of creditors." First National Bank of Chicago v. Commissioner, 255 F.2d 759, 762 (7th Cir. 1958). At least to the extent of the cash bequest petitioner is clearly a legatee and as such meets the classic definition of a transferee under section 6901. Sec. 6901(h). Section 6901 sets forth a collection procedure to be used by respondent against transferees. Section 6901 does not establish or define a transferee's substantive liability as a transferee. The existence and extent of such liability is determined under State law. Commissioner v. Stern, 357 U.S. 39, 41-45 (1958); Berliant v. Commissioner, 729 F.2d 496, 499 (7th Cir. 1984); Gumm v. Commissioner, 93 T.C. 475 (1989). Thus, in the case before us, petitioner's liability as a transferee, if any, must be determined by reference to the law of Missouri. *82 However, it is clear that in Missouri it has long been established that the distributees of a decedent's estate take and hold the decedent's assets subject to an implied trust in favor of the decedent's creditors and that such distributees are liable for such debts in equity to the extent of the value of the assets. Hagan v. Lantry, 338 Mo. 161, 89 S.W. 2d 522 (1935); Walker v. Deaver, 79 Mo. 664 (1883). As we stated in Moran v. Commissioner, 45 T.C. 528, 529-530 (1966), there are five elements which respondent must prove in order to establish transferee liability. The five elements are: (1) That a transfer of assets was made from the transferor to the transferee; (2) That the transfer was made for inadequate consideration; (3) That the transferor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (4) The value of the property transferred; and (5) That the transferor presently owes the tax. *83 From the record before us it is apparent that respondent has proved each of the elements necessary to establish transferee liability. First, in January and February of 1984 the Estate of Charles J. LaMothe transferred to petitioner $ 225,000 in full satisfaction of the $ 250,000 bequest in Mr. LaMothe's will. Secondly, the transfer was made for less than a full and adequate consideration because the payment of such a bequest is a transfer that lacks consideration. See Shimko v. Commissioner, T.C. Memo. 1972-64. Thirdly, the transferor, the Estate of Charles J. LaMothe, was obviously left insolvent by the transfer because in the absence of the payment of the $ 225,000 in satisfaction of the bequest to petitioner the estate would have been solvent under either the equity test of insolvency (the inability to meet obligations as they accrue) or the bankruptcy test for insolvency (having liabilities in excess of assets). Swinks v. Commissioner, 51 T.C. 13, 17 (1968); and Kreps v. Commissioner, 42 T.C. 660, 670 (1964), affd. 351 F.2d 1 (2d Cir. 1965). Fourthly, the value of the assets transferred has been shown. *84 Finally, the transferor presently owes the tax. The transfer took place in early 1984, long after the liability of Mr. LaMothe for the 1979 income tax had accrued on April 15, 1980. Although the transfer must occur after the tax liability accrues, the tax need not be assessed at the time of the transfer. Swinks v. Commissioner, supra; Kreps v. Commissioner, supra.Respondent has exhausted all reasonable efforts to collect the deficiency in tax from the transferor by assessing it against his estate which no longer has any assets. Petitioner's contention that she is not liable as a transferee for the income tax deficiency because she did not receive any assets from the estate ignores the facts and is without merit. Contrary to her contention the record as a whole clearly demonstrates that she received the $ 225,000 as a bequest from the estate and not as a gift from Joan LaMothe Bebee and her brother, Charles Rodney LaMothe. It is true that the funds with which the bequest was paid were advanced to the estate by Mrs. Bebee and her brother, but we have found that the advances were loans to the estate and not gifts to the estate or to *85 petitioner. Petitioner's further contention that the $ 225,000 was paid by Mrs. Bebee and her brother in order to avoid a personal surcharge against Mrs. Bebee "for the purported mishandling of the estate" is also a distortion of the record. We have found that after payment of Federal estate tax the probate estate did not have sufficient funds to pay petitioner's bequest. At this point petitioner filed the action in the Circuit Court to compel the payment of her bequest. In due course, the Probate Division of the Circuit Court ordered the Personal Representative to pay the bequest or face the possibility of a personal surcharge. Thereafter a payment in satisfaction of the bequest was made. In view of the foregoing, we conclude that petitioner is liable as the transferee of Charles J. LaMothe, Deceased, for the deficiency in 1979 of $ 18,060, plus interest as provided by law under the provisions of section 6901. Due to concessions, and to the duplication of petitioner's liability for the deficiency, first under the joint return for 1979, and secondly as a transferee of Charles J. LaMothe, Deceased, Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩